UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHAEL BASZTO,

                    Plaintiff,

          V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

---

**REPORT AND
RECOMMENDATION**

08-CV-958
(TJM/VEB)

## I. INTRODUCTION

In September of 2006, Plaintiff Michael Baszto filed an initial application for Disability

Insurance Benefits ("DIB") under the Social Security Act.  Plaintiff alleges that he has been

unable to work since August 27, 2006, due to the combined effects of cognitive deficits

involving intellectual, cognitive, and communicative limitations, as well as an adjustment

disorder with depressed mood, epilepsy, arthritis, and the post-operative implications of two

brain surgeries.  The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, through his attorneys, Conboy, McKay Law Firm, Lawrence D. Hasseler,

Esq. of counsel, commenced this action on September 9, 2008, by filing a Complaint in the

United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff

seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405

(g) and 1383 (c)(3).

On November 5, 2009, the Honorable Norman A. Mordue, Chief United States

District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for DIB on September 15, 2006, alleging disability beginning on August 27, 2006. (T at 48, 62).[1]  The application was denied initially on January 3, 2007. (T at 17, 26).   Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T at 24, 32).   A hearing was held in Watertown, New York on January 28, 2008, before ALJ Elizabeth Koennecke. (T at 280).  Plaintiff, represented by counsel, appeared and testified.  (T at 280).  On March 26, 2008,  ALJ Koennecke issued a decision denying the application for benefits.  (T at 14-23).   Plaintiff filed a request for review of that decision.   The ALJ's decision became the Commissioner's final decision on August 26, 2008, when the Appeals Council denied Plaintiff's request.   (T at 5-9).

Plaintiff, through counsel, commenced this action on September 9, 2008. (Docket No. 1).   Plaintiff filed a supporting Brief on November 24, 2008. (Docket No. 7).   The Commissioner filed a Brief in opposition on February 23, 2009. (Docket No. 11).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 6).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, it is respectfully recommended that the Commissioner's decision be affirmed.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

**1.     Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. (T at 16).  The ALJ also found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability, August 27, 2006. (T at 16).   The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: osteoarthritis in both knees and degenerative disc disease of the lumbar and cervical spine. (T at 16).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 20).  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work

as a custodian.  (T at 22).

Specifically, the ALJ found that Plaintiff can lift/carry twenty (20) pounds occasionally and ten (10) pounds frequently, stand/ walk six (6) hours in an eight (8) hour work day, sit for six (6) hours in an eight (8) hour workday, and push/pull twenty (20) pounds occasionally and ten (10) pounds frequently. (T at 20).  The ALJ found that Plaintiff cannot climb, balance, crouch, or crawl and could only occasionally kneel, stoop and reach.  (T at 31).  The ALJ found that Plaintiff needs to avoid hazards.  (T at 20).

The ALJ noted that Plaintiff, born March 8, 1958, was a "younger individual" as defined in 20 C.F.R. § 404.1563.  (T at 22).  The ALJ found that given Plaintiff's age, education (high school), work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 22). As such, the ALJ found that Plaintiff has not been under a disability, as defined under the Act at any time relevant to the ALJ's decision. (T at 23).

As noted above, the ALJ's decision became the Commissioner's final decision on August 26, 2008 , when the Appeals Council denied Plaintiff's request for review.  (T at 5-9).

### 2.      Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers three (3) principal arguments in support of her position.  First, he asserts that the Commissioner erroneously ignored regulatory safeguards designed to ensure the proper evaluation of disability claims involving mental limitations.  Second, Plaintiff argues that the Commissioner failed to properly assess Plaintiff's RFC.  Third, Plaintiff contends that the Commissioner improperly failed to obtain the testimony of a vocational expert. This Court

6

will address each argument in turn.

        **a.**    **Mental Impairments**

Plaintiff alleges disability based upon, *inter alia*, cognitive impairments and adjustment disorder.  The ALJ determined that Plaintiff had failed to demonstrate that his cognitive issues were a medically determinable impairment. (T at 17).  Further, the ALJ concluded that Plaintiff's adjustment disorder was not a "severe" impairment. (T at 18).  Plaintiff challenges both of these determinations.

Plaintiff alleges that his cognitive impairments have caused difficulties during his past employment. (T at 92, 295, 297).  Plaintiff points to the report of consultative examiner Jeanne A. Shapiro, Ph.D., in which she opined that Plaintiff's insight and judgment were "fair." (T at 170-71).  In a subsequent exam, Dr. Shapiro performed IQ testing, which resulted in a verbal scale IQ of 77, performance scale IQ of 68, and full scale IQ of 70. (T at 225).

Plaintiff also references the report of consultative examiner Michael L. Boucher, Ph.D., who reached the following conclusions: "There appear to be significant limitations currently on the client's academic abilities in reading comprehension and mathematical calculations, his recent recall memory for visual-figural input, speed of performance and his ability to deal with his dysphoric moods including depression, irritability and social and performance anxiety." "Historical, observational and self-report date provide clear evidence of significant learning disabilities meeting criteria for DSM IV Axis 1 diagnoses of a Reading Disorder and a Mathematics Disorder." (T at 264).

The Commissioner has established a "special technique" for determining whether a mental impairment is severe at step two of the sequential evaluation process. Kohler v.

Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) ( citing 20 C.F.R. § 404.1520a). The special technique requires a threshold determination as to whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1)&(2) (("[The ALJ] must *first* evaluate [a claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant] ha[s] a medically determinable mental impairment[ ] .... [the ALJ] must *then* rate the degree of functional limitation ...") (emphasis added).

If a medically determinable impairment is established, the ALJ must rate the degree of the claimant's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). "[T]he written decision must incorporate the pertinent findings and conclusions based on the technique." 20 C.F.R. § 404.1520a(e)(2).

In the present case, the ALJ noted that Plaintiff's treating doctor "did not perform any formal psychometric testing" on the Plaintiff. (T at 17, 217).  The ALJ also cited consultative examiner Dr. Shapiro's October 2006 report, in which she indicated that Plaintiff's manner of relating, social skills, and overall presentation were "adequate." (T at 17, 170).  Plaintiff's receptive and expressive language were likewise described as "adequate," his recent and remote memory skills were found to be "intact," and his intellectual functioning was estimated to be in the average range. (T at 170).  Dr. Shapiro reached similar conclusions in her October 2007 report.  (T at 220).  The ALJ rejected the IQ scores obtained by Dr. Shapiro, noting that Dr. Shapiro herself had called the findings into question by indicating the possibility of "malingering." (T at 226).

This Court is troubled by the ALJ's failure to address Dr. Boucher's assessment

concerning "significant" learning disabilities.  It would seem that this assessment, combined with the other evidence of record, was sufficient to at least establish a medically determinable impairment with regard to Plaintiff's cognition.  However, this Court finds that any error by the ALJ in this regard was harmless.   The ALJ indicated that she had considered whether Plaintiff's impairments met or medically equaled §12.05 of the Listings (*i.e.* the Listing for mental retardation) and found that they did not. (T at 20). Even assuming that Plaintiff established a medically determinable cognitive impairment and that the impairment was "severe," the ALJ's finding with respect to §12.05 was supported by substantial evidence.

As used in connection with Listing §12.05, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." Mental retardation is established when one of four sets of criteria are met.  A claimant who is found to meet these requirements is presumed disabled at step three without further inquiry. See 20 C.F.R. § 404.1520(a)(4)(iii).  Sections (C) and (D) are the only sections of the Listing that even arguably apply in this case and both require a "valid verbal, performance, or full scale IQ of 60 through 70."

In this case, the ALJ determined that the scores obtained by Dr. Shapiro in October 2007  (verbal scale IQ of 77, performance scale IQ of 68, and full scale IQ of 70) were not valid.  Section 12.05 refers to "valid" IQ scores and several of the circuit courts of appeals have held that an ALJ may reject an IQ score as invalid when it is inconsistent with the record.  Lax v. Astrue, 489 F.3d 1080, 1087 (10th Cir.2007) (citing Markle v. Barnhart, 324 F.3d 182, 186 (3d Cir.2003); Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir.1998); Muse v.

9

Sullivan, 925 F.2d 785, 790 (5th Cir.1991); Lowery v. Sullivan, 979 F.2d 835, 837-39 (11th Cir.1992)) ("We conclude that it was proper for the ALJ to consider other evidence in the record when determining whether Lax's IQ scores were valid and that the record contains substantial evidence to support of finding that Lax's IQ scores were not an accurate reflection of his intellectual capabilities."); see also Clay v. Barnhart, 417 F.3d 922, 929-31 (8th Cir.2005) (upholding the ALJ's rejection of two sets of IQ scores where the test administrator considered the first set invalid and the report on the second set was sufficiently equivocal as to its validity to allow the ALJ to disregard its conclusions); Brown v. Sec'y of Health & Human Servs., 948 F.2d 268 (6th Cir.1991) (holding that the district court's conclusion that Plaintiff's IQ score was invalid was unsupported by substantial evidence, but not questioning the fact-finder's role in determining the validity of IQ scores); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir.1986) (finding the ALJ's rejection of the Plaintiff's low IQ scores proper where the Plaintiff was close to completing a bachelor's degree and had taught high school algebra); Vazquez ex rel. Jorge v. Barnhart, 2005 WL 2429488, at *8 (S.D.N.Y. Sept. 30, 2005) ("As Jorge has multiple IQ scores both below and above 70, it is for the ALJ to reconcile these scores."); Vasquez-Ortiz v. Apfel, 48 F.Supp.2d 250, 257 (W.D.N.Y.1999) (stating that "an ALJ is not required to accept a claimant's IQ scores when they are inconsistent with the record" but finding the Plaintiff's scores were not inconsistent with the record) (quoting Popp, 779 F.2d at 1499-1500).

In this case, Dr. Shapiro herself noted that the "discrepancy" between Plaintiff's October 2007 IQ scores (77 verbal, 68 performance, 70 full scale) and the results obtained by Dr. Boucher in October 2006 (91 verbal, 81 performance, 85 full scale). (T at 225-26, 262). Dr. Shapiro indicated that the inconsistency raised "the question of malingering." (T

at 226).   Indeed, Dr. Shapiro's ultimate conclusion was that "[n]o definitive statement [could] be made regarding [Plaintiff's] functional abilities due to the possibility of malingering." (T at 226-27).   These indications alone provide substantial evidence in support of the ALJ's decision to consider the October 2007 scores invalid.

Further support for the ALJ's assessment is found in State Agency review consultant A. Hochberg's determination that Plaintiff was capable of "at least semiskilled work activity" and had only mild limitations with regard to activities of daily living and maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (T at 187, 199).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

While this Court ordinarily would have difficulty sustaining the ALJ's finding that Plaintiff's cognitive limitations (as diagnosed by Dr. Boucher) did not constitute a medically determinable impairment in certain kinds of cases, in light of the foregoing, the Court is confident that substantial evidence exists to support the ALJ's ultimate finding that Plaintiff's impairment did not meet or medically equal §12.05 of the Listings.

### b.      Residual Functional Capacity

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a RFC determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). A RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

The ALJ concluded that Plaintiff retained the RFC to lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours in an 8 hour day, sit 6 hours in an 8 hour day, and push/pull 20 pounds occasionally and 10 pounds frequently. (T at 20).

Plaintiff challenges this determination and references the following in support of that challenge: Plaintiff has no peripheral vision on his right side, rendering him unable to drive (T at 89, 233); Plaintiff complained of epileptic seizures, resulting in loss of consciousness and sphincter control (T at 228); a history of arthritis, degenerative disc disease, and degenerative joint disease caused Plaintiff pain in his neck, shoulders, elbows, hands, back, and knees (T 231, 233, 243-44). Dr. Brij Sinha, a consultative examiner, opined that Plaintiff had "mild to moderate limitation for prolonged walking, bending, and lifting due to history of arthritis in multiple joints." (T at 231). Dr. Charles Wasicek examined Plaintiff in

March of 2007 for a consultation and noted "moderately severe aching in terms of his knees" and "significant loss of motion with his neck." (T at 233-34).

This Court finds that the ALJ's assessment was supported by substantial evidence. Dr. James Naughten performed a consultative medical examination in October of 2006. Dr. Naughten described a "moderate limp" in Plaintiff's right leg and "moderate difficulty" walking on heels. (T at 174).  Plaintiff had mild difficulty getting on and off the exam table and rising from his chair. (T at 174).  Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (T at 174).  He had full range of motion of shoulders, elbows, forearms, and wrists, knees, and ankles bilaterally. (T at 175).  Dr. Naughten opined that Plaintiff had no limitation sitting or standing and moderate limitation with respect to walking, climbing stairs, pushing, pulling, reaching, lifting and carrying. (T at 176).

An October 2007 consultative examination by Dr. Sinha indicated that Plaintiff had normal gait and stance and could walk on his heels and toes without difficulty.  (T at 229). He was able to rise from a chair and get off and on the exam table without help. (T at 229). Plaintiff was noted to have full range of motion in his elbows, forearms, and wrists bilaterally, and full flexion, extension and lateral flexion of his cervical spine bilaterally. (T at 230).  Dr. Sinha determined that Plaintiff had "mild to moderate limitation for prolonged walking, bending and lifting," but had no other specific limitations. (T at 231).

The State Agency review analyst reviewed the medical records and determined that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, and stand/walk/sit for about 6 hours in an 8 hour workday. (T at 180).  The analyst concluded that Plaintiff retained the RFC to perform light work, provided he was not exposed to

heights, machinery, or other hazards. (T at 181).

The ALJ also reasonably concluded that Plaintiff's activities of daily living were inconsistent with the allegation of total disability.  Plaintiff testified that his seizures were controlled by medication (T at 284) and the records indicated that he had not had a seizure in several years. (T at 174, 228).  Plaintiff indicated that pain medication made his pain "bearable" and that he could "probably" lift 20 pounds.  (T at 285, 287).  At the time of the hearing, Plaintiff testified that he was working part-time (*i,e,* 16 hours a week) at TJ Maxx, mopping floors and cleaning. (T at 288).  Plaintiff opined that lack of energy prevented him from working full-time. (T at 288).  Plaintiff also volunteered at the Northern Regional Center for Independent Living, where he worked on newsletters, made copies, and performed general clerical tasks. (T at 289-90).  Around the house, Plaintiff gardens, mows the lawn, shovels snow occasionally, takes out the trash, handles the laundry twice a week, plays computer games, unloads the dishwasher, cares for the family cat, cleans windows, sweeps the kitchen, and painted his bathroom. (T at 87, 89-90, 301).  Plaintiff was also noted to participate in bowling on occasion. (T at 229).

With regard to the impact of Plaintiff's mental impairments on his RFC, this Court finds that Plaintiff failed to demonstrate that his impairments had a material impact on his ability to perform work.  As discussed above, the definite possibility of malingering was indicated and Plaintiff's limitations were generally described as only mild to moderate.

In light of the foregoing, this Court finds no reversible error as to the ALJ's RFC determination, which is supported by "such relevant evidence as a reasonable mind might accept as adequate" to sustain the ALJ's conclusion. <u>Richardson</u>, 402 U.S. at 401.

### c.    Failure to Consult a Vocational Expert

14

At Step 5, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).

In this, and other SSI and DIB cases, the second part of this two part process is generally satisfied by referring to the applicable rule set forth in Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

An ALJ may rely on the Grids for guidance in determining the range of work available to a claimant (without calling a vocational expert), even if the claimant has non-exertional limitations, as long as those limitations do not significantly erode the range of work that would otherwise be available to the claimant. Id. at 605.

In the present case, the ALJ determined that although Plaintiff's ability to perform work at all exertional levels had been compromised by his non-exertional limitations, those limitations had little or no effect on the occupational base of unskilled light work. (T at 23). The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Bapp, 802 F.2d at 603.  Rather, exclusive reliance on the Grids will be deemed inappropriate only where the non-exertional impairments "*significantly* limit the range of work permitted by his exertional limitations." Id. at 605-06 (emphasis added).  "A claimant's work capacity is 'significantly diminished' if there is an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range

15

of work as to deprive him of a meaningful employment opportunity.'" Id. at 606.

For the reasons set forth above, the Court finds that the ALJ's conclusion that Plaintiff's work capacity was not significantly diminished by his limitations was supported by substantial evidence.  As such, the ALJ was permitted to rely on the Grids in the second part of the two parts of step five to assess that there were a significant number of jobs in both the national and local economy that Plaintiff could perform. See SSR 83-10; SSR 85-15; see also Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir.1986).

Thus, the Court finds the ALJ properly relied on the Grids when she made her determination that a significant number of jobs existed in the national and local economy that Plaintiff could perform. Further, the ALJ was not required to engage the services of a vocational expert to assess the number of jobs in the national and local economy, because under the applicable guidelines, the jobs available to Plaintiff were not significantly eroded by his limitations.


## IV. CONCLUSION


After carefully examining the administrative record and considering the arguments of counsel, this Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of

16

pain and other limitations an appropriate weight when rendering her decision that Plaintiff is not disabled. The Court finds no reversible error.  Because this Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   January 26, 2010

Syracuse, New York

## V. ORDERS

17

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

January 26, 2010

Victor E. Bianchini
United States Magistrate Judge